## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

May 06 2019, 10:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Office, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Evan Matthew Comer
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| James Curtis Todd,<br>*Appellant-Defendant,*<br><br>v.<br><br>State of Indiana,<br>*Appellee-Plaintiff.* | May 6, 2019<br><br>Court of Appeals Case No.<br>18A-CR-3017<br><br>Appeal from the Sullivan Superior Court<br><br>The Honorable Hugh R. Hunt, Judge<br><br>Trial Court Cause No.<br>77D01-1804-CM-247 |

**Bradford, Judge.**

# Case Summary

[1] In March of 2018, James Curtis Todd removed a gate and part of a fencerow belonging to his cousin Jacob Todd, allegedly believing that the gate and fencerow were on his land. Prior to the removal, Jacob had told James that a survey had been conducted and it indicated that the fencerow was on Jacob's land. James was charged with and convicted of Class B misdemeanor criminal mischief. James contends that the State produced insufficient evidence to sustain his conviction. We affirm.

# Facts and Procedural History

[2] In September of 2017, Jacob's parents deeded to him a one-acre tract of land, on which he planned to place a modular home. The southern boundary of Jacob's land abutted a tract of land that had once belonged to his great-grandfather but by 2017 was owned by his cousin James. Near the boundary line of the two properties was a fencerow which had been placed there years prior to either Jacob or James owning their respective tracts. Prior to deeding the land to Jacob, his parents contracted with a firm to conduct a land survey. The survey indicated that the fencerow rested on Jacob's land, some seven to eight inches north of the southern boundary line.

[3] In March of 2018, a heated verbal dispute occurred between Jacob and James after Jacob trimmed tree limbs along the fencerow. Jacob explained that a survey had been conducted on his land, he knew where the property lines were,

and there was no mistake as to the proper boundary lines. Jacob also offered to give James a copy of the survey. James, disagreeing, claimed that the northern boundary of his land extended eighteen feet north of the fencerow, meaning that the fencerow was on his land. Eventually, police arrived and broke up the dispute.

[4] Prior to the dispute, a gate attached to the fencerow had been kept open by the previous owners for travel between the two tracts. After the dispute, however, Jacob decided to permanently close the gate by burying a pole in the ground to hold it shut and fastened it with a metal chain and lock. A day or two later, Jacob discovered the pole, chain, and lock laying in his driveway by his mailbox. Review of video footage recorded on a trail camera revealed that at approximately 1:45 a.m., James and his girlfriend had removed the gate and portions of the fencerow.

[5] On April 12, 2018, the State charged James with Class A misdemeanor criminal trespass and Class B misdemeanor criminal mischief. A bench trial was held on September 12, 2018. On September 18, 2018, the trial court found James guilty of criminal mischief and acquitted him of criminal trespass. The trial court sentenced James to 180 days imprisonment with 168 days suspended and 353 days of non-reporting probation.

# Discussion and Decision

[6] James contends that the State presented insufficient evidence to support his criminal mischief conviction. James does not challenge that Jacob's property was damaged or defaced without his consent, only that he acted without the required *mens rea*. When reviewing the sufficiency of evidence to support a conviction, we consider only probative evidence and reasonable inferences supporting the factfinder's decision. *Young v. State*, 973 N.E.2d 1225, 1226 (Ind. Ct. App. 2012), *trans. denied*. It is the role of the factfinder, not ours, to assess witness credibility and weigh the evidence. *Id.* We will affirm a conviction unless "no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt." *Id.* To convict James of Class B misdemeanor criminal mischief, the State had to establish that James recklessly, knowingly, or intentionally damaged or defaced Jacob's property without Jacob's consent. Ind. Code § 35-43-1-2(a).[1]

[7] We conclude that there was sufficient evidence to sustain James's conviction. Because Indiana Code section 35-43-1-2(a) is written in the disjunctive, the State was only required to prove that James acted with one of the *mens rea* listed. The record indicates that a survey was conducted which revealed that

---

[1] Indiana Code section 35-41-2-2 dictates that

> (a) A person engages in conduct "intentionally" if, when he engages in the conduct, it is his conscious objective to do so.

> (b) A person engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so.

> (c) A person engages in conduct "recklessly" if he engages in the conduct in plain, conscious, and unjustifiable disregard of harm that might result and the disregard involves a substantial deviation from acceptable standards of conduct.

the fencerow was part of Jacob's land. The record also indicates that James was made aware of the results of the survey and offered a copy of it. James was on notice that the boundary-line and ownership of the fencerow were disputed at best, and our justice system has proper avenues for settling such a dispute, of which James failed to avail himself. James's claimed belief that the fencerow was on his land does not absolve his dismantling of Jacob's gate and fence at 1:45 a.m. in the morning, nor will we condone such actions. Dismantling the fencerow in the middle of the night could have resulted, but thankfully did not, in much more than just legal peril for James and his girlfriend, which is why the General Assembly has sought to dissuade such behavior. Therefore, a reasonable factfinder could find that James's actions were reckless, knowing, or intentional. James has failed to establish that there was insufficient evidence to support his criminal mischief conviction.

[8] The judgment of the trial court is affirmed.

Crone, J., and Tavitas, J., concur.